UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

**ESTATE OF TYSHUN L. LEMONS**,

    Plaintiff,

    v.                                      Case No. 24-CV-703

**KEVIN A. CARR, *et al.*,**

    Defendants.

### ORDER

On January 22, 2025, defendants Wisconsin Department of Corrections, Kevin A. Carr, Jared Hoy, and Randall Hepp filed a motion for judgment on the pleadings pursuant to Fed. R. Civ. P. 12(c). (ECF No. 23.) The motion is fully briefed and ready for a decision.

### ALLEGATIONS AND CLAIMS IN THE COMPLAINT

On October 2, 2023, while incarcerated at Waupun Correctional Institution, Tyshun Lemons, whose is the subject of this suit, died from an overdose of acetyl fentanyl. (ECF No. 1, ¶ 2.) Defendant Kevin A. Carr is the Secretary of the Wisconsin Department of Corrections (DOC). (*Id.*, ¶ 13.) Defendant Jared Hoy is the Deputy Secretary of the DOC, and defendant Randall Hepp was the Warden at Waupun at the time. (*Id.*, ¶¶ 13-15.)

Months before Lemons's death, on March 29, 2023, Hepp, with the knowledge of Carr and Hoy, implemented a lockdown at Waupun. (ECF No. 1, ¶¶ 23, 56) At the time

Waupun housed approximately 120 prisoners over the 882-person capacity. (*Id.*, ¶ 25.) Also during this period Waupun staff conducted a sweep and found illegal drugs and contraband. (*Id.*, ¶ 26.) As a result, Wisconsin Governor Tony Evers requested the Wisconsin Department of Justice to investigate the issue. (*Id.* ¶ 27.) Between January 2020 and March 2023, Waupun had 44 incidents where Narcan or naloxone (medication used to rapidly reverse the effects of an opioid overdose) was used, and there were 600 such incidents across all Wisconsin DOC institutions. (*Id.*, ¶ 29.) The plaintiff alleges that the defendants were aware of the illegal substance problem at Waupun, including the introduction of illegal drugs that could cause death. (*Id.*, ¶¶ 28, 67.) As a result of the investigation, 11 staff members were suspended for their role in the spread of illegal substances and contraband throughout Waupun. (*Id.*, ¶¶ 30, 60-61.)

On June 6, 2024, Iema Lemons, as the personal administrator of the estate for Tyshun Lemons, brought this lawsuit and included the following claims: Count I, *Monell* Liability; Count II, an Eighth Amendment claim for cruel and unusual punishment; Count III, an Eighth Amendment claim for deliberate indifference to a serious risk of health and safety; Count IV,[1] a Fourteenth Amendment claim for state created danger; and Count V, a claim for failure to train, supervise, and protect.

---

[1] The plaintiff mislabeled Counts IV and V as "Count III" for both. The court corrects this error within this order, using the appropriate number for each count.

## STANDARD

Rule 12(c) provides that, "[a]fter the pleadings are closed—but early enough not to delay trial—a party may move for judgment on the pleadings." In other words, Rule 12(c) permits a party to move for judgment after the parties have filed the complaint and answer. *N. Indiana Gun & Outdoor Shows, Inc. v. City of S. Bend*, 163 F.3d 449, 452 (7th Cir. 1998). The pleadings include the complaint, the answer, and any written instruments attached as exhibits. *Id.* A motion under Rule 12(c) is governed by the same standards as a motion to dismiss for failure to state a claim under Rule 12(b)(6). *Adams v. City of Indianapolis*, 742 F.3d 720, 728-29 (7th Cir. 2014). "To survive a motion to dismiss under Rule 12(b)(6), a complaint must 'state a claim to relief that is plausible on its face.' . . . Factual allegations are accepted as true at the pleading stage, but 'allegations in the form of legal conclusions are insufficient to survive a Rule 12(b)(6) motion.'" *Id.* at 729 (citations omitted). The allegations must "permit the court to infer more than the mere possibility of misconduct." *Olson v. Champaign Cty., Ill.*, 784 F.3d 1093, 1099 (7th Cir. 2015) (citations omitted). At this stage, the court should not ask whether the allegations actually occurred but instead should ask whether they could occur. *Id.*

## ANALYSIS

The defendants move for a judgment on the pleadings for all five claims.

*Count I, Monell Liability*

The plaintiff agrees to withdraw the DOC as a defendant. (ECF No. 24 at 3.) As such, the DOC is dismissed.

As to the claim pursuant to *Monell v. Dept. of Social Servs. of City of New York*, 436 U.S. 658 (1978), liability does not apply to state employees; it only applies to municipalities or private contractors that provide services to the municipality. *Howell v. Wexford Health Sources, Inc.*, 987 F.3d 647, 653 (7th Cir. 2021).

However, the plaintiff also sues the defendants in their official capacities. States "enjoy[] the privilege of the sovereign not to be sued without its consent" and the "Eleventh Amendment prohibits suits against a state in federal court, whether by its own citizens or citizens of another state." *Gerlach v. Rokita*, 95 F.4th 493, 498 (7th Cir. 2024) (quoting *Driftless Area Land Conservancy v. Valcq*, 16 F.4th 508, 520 (7th Cir. 2021)). Because "[i]n an official capacity claim, the relief sought is only nominally against the official and is in fact against the official's office", the claim is "against the sovereign itself." *Lewis. v. Clarke*, 581 U.S. 155, 162 (2017). As such, the Eleventh Amendment's protection "extends to state employees sued in their official capacities." *Gerlach*, 95 F.4th at 498-99. An exception permits a lawsuit against an individual state official in his official capacity for ongoing violations of federal law as long as the remedy sought is "prospective injunctive or declaratory relief." *MCI Telecom Corp. v. Ill Bell Tel. Co.*, 222 F.3d 323, 336 (7th Cir. 2000) (discussing *Ex Parte Young*, 209 U.S. 123 (1908)).

The plaintiff states estate seeks "prospective injunctive relief aimed at halting ongoing violations of federal law." (ECF No. 24 at 4.) However, nowhere in the complaint does it request injunctive or declaratory relief. The requested relief only asks for monetary damages that are retrospective. (ECF No. 1 at 11.) For purposes of obtaining

4

damages rather than injunctive relief, "neither a State nor its officials acting in their official capacities are 'persons' under § 1983." *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 71 (1989).

The court grants the defendants' motion to dismiss Count I.

> *Count II, Eighth Amendment Cruel and Unusual Punishment, and Count III, Eighth Amendment Deliberate Indifference*

The defendants argue that they cannot be held liable under the Eighth Amendment on a theory of supervisor liability.

Section 1983 "creates a cause of action based on personal liability and predicated upon fault; thus, liability does not attach unless the individual defendant caused or participated in a constitutional violation." *Hildebrant v. Ill. Dep't of Nat. Res.*, 347 F.3d 1014, 1039 (7th Cir. 2003) (quoting *Vance v. Peters*, 97 F.3d 987, 991 (7th Cir. 1996)). Because §1983 makes public employees liable "for their own misdeeds but not for anyone else's," *Burks v. Raemisch*, 555 F.3d 592, 596 (7th Cir.2009), a plaintiff must allege what each individual defendant did (or did not do) to violate his constitutional rights.

"The doctrine of *respondeat superior* does not apply to § 1983 actions; thus, to be held individually liable, a defendant must be personally responsible for the deprivation of a constitutional right." *Sanville v. McCaughtry*, 266 F.3d 724, 741 (7th Cir. 2001) (quotations omitted). "A defendant will be deemed to have sufficient personal responsibility if he directed the conduct causing the constitutional violation, or if it occurred with his knowledge or consent." *Id.* (quotation omitted). However, the individual

5

Case 2:24-cv-00703-WED    Filed 06/11/25    Page 5 of 10    Document 28

defendant "does not have to have participated directly in the deprivation." *Id.* Liability may be found "where an official knows about unconstitutional conduct and facilitates, approves, condones, or 'turns a blind eye.'" *Perez v. Fenogolio*, 792 F.3d 768, 781 (7th Cir. 2015) (quoting *Vance*, 97 F.3d at 992-93).

In *Ollison v. Gossett*, -- F.4d --, 2025 WL 1318362, (7th Cir. May 7, 2025), the Seventh Circuit Court of Appeals identified two categories of claims for deliberate indifference:[2] first, "claims of isolated instances of indifference to a particular inmate's medical needs", and, second, "claims that systemic deficiencies at the prison's health care facility rendered the medical treatment constitutionally inadequate for all inmates." *Id.* at *3. "Even though they are separate categories, '[t]he subjective state-of-mind element applies to claims of isolated incidents of indifference *and* pervasive deficiencies in prison medical treatment.'" *Id.* (quoting *Rasho v. Jeffreys*, 22 F.4th 703, 710 (7th Cir. 2022)).

""The general responsibility of a warden for supervising the operation of a prison is not sufficient to establish personal liability' for systemic deficiencies." *Id.* (quoting *Steidl v. Gramley*, 151 F.3d 739, 741 (7th Cir. 1998)). "To prevail on a systemic deficiency claim, the plaintiff must demonstrate that 'there are such systemic and gross deficiencies in staffing, facilities, equipment, or procedures" that they expose the prison population to

---

[2] The court notes that *Ollison* concerns specifically claims of deliberate indifference to medical needs, which is slightly different than the claims of cruel and unusual punishment and deliberate indifference to a health and safety risk. However, the *Ollison's* court analysis, especially regarding liability for systemic deficiencies, applies.

violations of their Eighth Amendment rights. *Id.* (quoting *Wellman v. Faulkner*, 715 F.2d 269, 272 (7th Cir. 1983)).

The court in *Ollison* held that the plaintiff's complaint "only contains general allegations" and did not put the defendant wardens on notice "of the factual grounds on which his systemic deficiency claim rests." *Id.* at *5. Specifically, the complaint did not mention any specific deficiencies in the health care system of the prison that impacted the provision of health care to prisoners, such as poor staff performance or lack of managerial oversight. (*Id.*) Nor did the complaint allege that the wardens knew about the impact of the systemic deficiencies on the provision of health care to prisoners. (*Id.*)

Here, the allegations against the defendants fall into the second category of deliberate indifference—allegations of systemic deficiencies causing constitutional violations. Unlike the complaint in *Ollison*, the complaint here does more than generally allege that the defendants had overall responsibility for the operations at Waupun. The complaint alleges that Waupun was overcrowded. It also states the sweep conducted at Waupun uncovered a problem with the proliferation of illegal drugs and uncovered staff involvement in the distribution of illegal drugs and contraband. Additionally, as a result of an investigation prior to Lemons's death, the complaint alleges that the defendants knew of an overdose problem--there were over 40 incidents of Narcan used to prevent accidental overdose. Additionally, the report summarizing the DOJ's investigation indicated that this was a DOC-wide problem.

The plaintiff, then, sufficiently alleges "such systemic and gross deficiencies in staffing, facilities, equipment, or procedures" that resulted in the proliferation of illegal drugs which created a substantial risk to health and safety that resulted in Lemons's death and subjected the prison population to potential drug overdose (*i.e.,* the unnecessary and wanton infliction of pain). *See Ollison*, 2025 WL 1318362, at *4; *see also Collins v. Seeman,* 462 F.3d 757, 760 (7th Cir. 2006) (discussing exposure to substantial risks to health and safety); *Pyles v. Fahim*, 771 F.3d 403, 408 (7th Cir. 2014) (quoting *Rhodes v. Chapman*, 452 U.S. 337, 347 (1981)) (discussing conditions that subject prisoners to the wanton and unnecessary infliction of pain). The plaintiff's allegations are sufficient to put the defendants on notice of the factual grounds on which the plaintiff's systemic deficiency claim rests, which is all that is required. *Ollison* 2025 WL 1318362, at *4-5. The defendants' motion as to the Eighth Amendment claims is denied.

*Count IV, Fourteenth Amendment State Created Danger*

The plaintiff brings a substantive due process claim pursuant to the Fourteenth Amendment, stating that the defendants created dangerous conditions that led to Lemons's death. The United States Supreme Court has long held that, where prisoner-plaintiffs are alleging exposure to the unnecessary and wanton infliction of pain, the Eighth Amendment provides protection. *Whitley v. Albers*, 475 U.S. 312, 327 (1986). Accordingly, the Fourteenth Amendment does not provide any additional protection that the Eighth Amendment does not already provide. *Id. See also Graham v. Connor*, 490 U.S. 386, 395 (1989) (holding that where there is "an explicit textual source of

constitutional protection" a plaintiff cannot bring an additional substantive due process claim).

The plaintiff argues that the concept of supervisor liability creates a separate framework making "the State Created Danger doctrine . . . a distinct avenue for claims under the Fourteenth Amendment." However, it does not flesh out this argument. (ECF No. 24 at 5.) The case law in the Seventh Circuit has not stated that a state created danger is a separate claim where the Eighth Amendment is also implicated. The allegations the plaintiff asserts clearly fall under the umbrella of the Eighth Amendment, which is the appropriate route to pursue a claim under 42 U.S.C. § 1983.

The court grants the defendants' motion to dismiss Count IV.

*Count V, Failure to Train, Supervise, Protect*

The plaintiff argues that the defendants can be held personally liable for their failure to train and supervise their staff. The plaintiff attempts to bring these claims as separate from the Eighth Amendment claims discussed above. However, as discussed above, the failure to train, supervise, and protect attach to unconstitutional conduct—in this case, conduct governed by the Eighth Amendment. *See Hildebrant*, 347 F.3d at 1039. In the context of Eighth Amendment claims, failure to train claims "may only be maintained against a municipality." *Brown v. Budz*, 398 F.3d 904, 918 (7th Cir. 2005) (citing *Sanville v. McCaughtry*, 266 F.3d 724, 739-40 (7th Cir. 2001)). Such claims cannot be brought against the State or individual employees.

In other words, there is no separate constitutional claim for an individual's failure to train or supervise staff conduct that caused Eighth Amendment violations. Instead, liability attaches under the broader scope of the Eighth Amendment's cruel and unusual punishment clause and the framework for deliberate indifference to systemic deficiencies discussed above. The defendants' motion to dismiss Count V is granted.

## CONCLUSION

For the reasons stated above, the court grants the defendants' motions as to Counts I, VI, and V, and denies the motion as to Counts II and III. The court will set a scheduling conference at a later date to move the case forward.

**IT IS THEREFORE ORDERED** that the defendants' motion for judgment on the pleadings (ECF No. 20) is **GRANTED in part and DENIED in part**. The motion is **GRANTED** as to Counts I, IV, and V, and those claims are **DISMISSED**. The motion is **DENIED** as to Counts II and III.

**IT IS FURTHER ORDERED** that the Wisconsin Department of Corrections is **DISMISSED**.

Dated in Milwaukee, Wisconsin this 10th day of June, 2025.

BY THE COURT

*William E. Duffin*

WILLIAM E. DUFFIN
United States Magistrate Judge